## EZRA WHITMARSH & another *vs.* CONWAY FIRE INSURANCE COMPANY.

A policy of insurance on a " stock in trade, consisting of the usual variety of a country store, except dry goods," with " permission to keep and sell burning fluid and gunpowder; " founded on an application which is made a part thereof, which states the property to be " the stock in trade, consisting of groceries, provisions, and such goods as are usually kept in a country store, except dry goods; " and declaring that if certain articles denominate l hazardous, extra-hazardous, and risks prohibited, enumerated therein, are kept in any premises insured, the policy shall be void, unless therein otherwise specially provided for; is not avoided by the keeping of some of these articles, if they are articles usually kept for sale in a " country store; " and parol evidence is admissible to prove this.

Evidence is admissible of a well settled custom by which the words "store fixtures" in a policy of insurance are applied to all furniture and other articles in a shop or warehouse, necessary or convenient for use in the course of trade.

ACTION OF CONTRACT upon a policy of insurance to the plaintiffs " on their stock in trade, consisting of the usual variety of a country store (except dry goods) and on their store fixtures, all contained in the wood building with brick basement, occupied by the assured, situated in East Bridgewater, Mass. Permission to keep and sell burning fluid and gunpowder, as per application." " And it is agreed and declared to be the true intent and meaning of the parties hereto, that in case the above mentioned premises shall at any time after the making and during the continuance of this insurance be appropriated, applied or used to or for the purpose of carrying on or exercising therein any trade, business or vocation denominated hazardous or extra-hazardous, or specified in the memorandum of special rates, or of risks prohibited, in the terms and conditions annexed to this policy, or for the purpose of keeping or storing therein any of the articles, goods or merchandise, in the same terms and conditions denominated hazardous or extra-hazardous, or included in the memorandum of special rates or of risks prohibited, unless herein otherwise specially provided for, or hereafter agreed by this company in writing and added to or indorsed upon this policy, then and from thenceforth, so long as the same shall be so appropriated, applied, used or occupied, these presents shall cease and be of no force or effect. And it is moreover declared

that this policy is made and accepted in reference to the conditions hereto annexed, which are to be used and resorted to in order to explain the rights and obligations of the parties hereto, in all cases not herein otherwise specially provided for; and no condition can be waived except in writing signed by the secretary."

Annexed to the policy were five classes of hazards, denominated respectively "not hazardous," "hazardous," "extra-hazardous," "memorandum of hazards which will be insured at special rates of premium," and a memorandum of hazards "prohibited and not to be insured at any rate of premium." Among the "trades and occupations, goods, wares and merchandise" denominated extra-hazardous were "burning fluid" and "earthen or glass ware;" in the memorandum of hazards to be insured at special rates of premium was included "oil;" and in the memorandum of articles not to be insured at any rate of premium were "gunpowder," "friction matches and match shops."

Among the conditions annexed to the policy were the following: "Applications for insurance must specify," "in case of goods or merchandise, whether or not they are of the description denominated hazardous or extra-hazardous, or included in the memorandum of special rates. And a false description by the insured, of a building or of its contents, or any misrepresentation or concealment, or omitting to make known any fact or feature in the risk which increases the hazard of the same, or in a valued policy, an over-valuation, shall render absolutely void a policy issuing upon such description or valuation. And if any application or survey, plan or description, of the property herein insured is referred to in this policy, such application or survey, plan or description, shall be deemed and taken to be a warranty on the part of the assured."

The application, which was expressly made a part of this policy and warranty on the part of the assured, requested insurance " on stock in trade, consisting of groceries, provisions, and such goods as are usually kept in a country store, with the fixtures of the same, except dry goods;" and in answer to the interrogatory, "Is there any other fact or circumstance affecting

Whitmarsh & another *v.* Conway Fire Insurance Company.

the risk?" stated, "Applicants want permission to use and sell burning fluid, and also to retail gunpowder, to be sold only in the daytime."

At the trial in the superior court, before *Russell,* J., it was admitted that the plaintiffs, at the time of the making of the contract of insurance and during the existence of the policy, and at the time of the fire, kept for sale in their shop, as a part of their usual stock in trade, whale oil, friction matches, and earthen and glass ware. The plaintiffs offered evidence that all these were articles usually kept in "country stores," and so were embraced in the terms of the policy. But the judge excluded the evidence, and ruled that keeping these things for sale had avoided the policy.

The plaintiffs, under the head of "store fixtures," claimed to recover for the loss of certain tools, implements, and furniture, not affixed to or forming part of the building; and offered evidence of a well settled custom among underwriters and the community generally by which the terms "fixtures" and "store fixtures" were used in insurance to denote all the movable articles of shops and warehouses which are convenient or necessary for use in the course of trade; and that these articles were of the kind usually known and called by that name. The defendants objected that they were not fixtures within the well settled legal definition of the term, and that therefore the plaintiff could not recover for the same; and the judge so ruled, and excluded the evidence. The jury returned a verdict for the defendants, and the plaintiffs alleged exceptions.

*B. W. Harris,* for the plaintiffs.

*S. O. Lamb,* for the defendants, cited *Lee* v. *Howard Fire Ins. Co.* 3 Gray, 583; *Macomber* v. *Howard Fire Ins. Co.* 7 Gray, 257; *The Reeside,* 2 Sumner, 567; *Richardson* v. *Copeland,* 6 Gray, 536; *Eaton* v. *Smith,* 20 Pick. 150; 1 Greenl. Ev. §§ 277, 280, 292; 2 Greenl. Ev. § 251; 2 Parsons on Con. 63.

CHAPMAN, J. The words of a written contract are the sole expositors of its meaning, except so far as they refer to something without the instrument. If another document is referred to — if, for example, a policy of insurance refers to an applica-

tion or survey, or to by-laws or regulations — the document referred to is to be construed in connection with the contract, and as a part of it, so far as the reference makes it such. If a custom or usage is referred to, the custom or usage is to be ascertained as in other cases by the proper evidence. If a term of art or trade is used in the contract, having a peculiar signification among persons conversant with the art or trade, the testimony of such persons becomes proper evidence to prove the meaning. These principles are to be applied to policies of insurance in the same manner as to other contracts.

Taking then the policy before us, we find in the printed form a provision referring to certain lists of property which are classed as hazardous, extra-hazardous, special rates, and not insurable ; and the keeping of these articles in a building insured renders the policy void, " unless herein otherwise specially provided for, or hereafter agreed by this company in writing, and added to or indorsed upon this policy." Turning to the description of property insured, we find it to be " their stock in trade, consisting of the usual variety of a country store (except dry goods) and on their store fixtures." The usual variety of a country store is thus provided for in the policy, and the defendants agree to insure it. But what such usual variety is can only be ascertained by parol evidence. We do not think that this construction of the language of the policy is changed by the special permission to keep burning fluid and gunpowder.

If then the plaintiffs can prove that oil, friction matches, earthen ware and glass ware, in such quantities as they kept them, compose a part of the usual variety of a country store, they have not violated their policy by keeping those articles. *Elliott* v. *Hamilton Mutual Ins. Co.* 13 Gray, 139. The parol evidence offered on this subject was pertinent and ought to have been admitted. So if the term " store fixtures " is a term of trade, commonly used among traders and insurers, and is used in such a signification as to include any or all the articles mentioned as such in the report, those were insured by this policy. The parol evidence offered on this subject was proper and ought to have been admitted.

The case of *Lee* v. *Howard Fire Ins. Co.* 3 Gray, 583, cited by the defendants' counsel, differed from the present case in this respect, that there was nothing in the description of the articles insured that could, either directly or by reference, include a grist-mill. The cases of *Macomber* v. *Howard Fire Ins. Co.* 7 Gray, 257, and *Witherell* v. *City Fire Ins. Co. ante,* 276, differed from this in making no mention of the usual practice, which these plaintiffs offered to prove.

*Exceptions sustained.*